IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–02278–KMT

MARGO L. BECERRA,

    Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

## ORDER

---

This matter is before the court on review of the Commissioner's denial of Plaintiff Margo L. Becerra's application for Disability Insurance Benefits ("DIB") pursuant to Title XVI of the Social Security Act (the "Act"). Jurisdiction is proper under 42 U.S.C. § 405(g). Plaintiff filed her opening brief on May 4, 2016 (Doc. No. 15 ["Opening Br."]). Defendant filed her Response Brief on May 25, 2016 (Doc. No. 16 ["Resp."]), to which Plaintiff filed a Reply on June 9, 2016. (Doc. No. 19 ["Reply"].)

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed for SSI on February 13, 2013 alleging she had been disabled since July 24, 2012 due to closed head injury, comprehension problems, depression, head pain, neck pain, upper and lower back pain, spine and nerve pain, arm and hand pain, leg pain, chronic pain, fibromyalgia pain syndrome, post-concussion, diffuse pain syndrome. (Doc. No. 10, Social Security Administrative Record ["AR"] at 254-68, 153-54.) The Commissioner denied

Plaintiff's application. (*Id.* at 153-72.) Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 205-06.) A hearing was held on September 19, 2014. (*Id.* at 94-151.) After the hearing, the ALJ determined Plaintiff was not disabled within the meaning of the Act because she could perform jobs that exist in significant numbers in the national economy. (*Id.* at 26-41.) The Appeals Council denied Plaintiff's request for review, *id.* at 1-4, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Plaintiff timely sought review by the Court.

## STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotations omitted). However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Thompson*, 987 F.2d at 1487.

The court may not affirm an ALJ's decision based on a *post-hoc* rationale supplied in an appellate brief, since doing so would "usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004). Although the Tenth Circuit has applied the doctrine of harmless error in administrative appeals, it is only appropriate where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145.

## ANALYSIS

Plaintiff argues (1) the ALJ failed to adequately consider Plaintiff's non-exertional impairments, specifically Plaintiff's migraine headaches, (2) the ALJ's findings related to Plaintiff's chronic pain are not supported by substantial evidence, (3) the ALJ failed to properly weigh the opinion evidence, (4) the ALJ's finding Plaintiff could walk and stand six hours in an eight hour work day is not supported by substantial evidence, (5) the ALJ erred by failing to order a non-mechanical application of the GRID rules.

**1. Consideration of Migraine Impairment**

   **a. Step Two**

Plaintiff asserts the ALJ erred at step two of the sequential evaluation process by failing to consider whether Plaintiff's migraines were a severe impairment and if not, failing to state why he did not find them to be severe. (Opening Br. at 27.) Defendant responds that any failure to include Plaintiff's migraines as a severe impairment need not be considered by the court because the ALJ proceeded to the next step of the sequential evaluation process. (Resp. at 9.)

As noted above, if a claimant does not have any severe impairments, the claimant is found not disabled at step two. *See* 20 C.F.R. § 404.1520(a)(4). However, upon determining a claimant has at least one severe impairment, the ALJ must continue the analysis under the sequential evaluation process. *Id.* Defendant explains that because the ALJ found Plaintiff had several severe impairments, he continued to the next steps of the sequential evaluation process, evaluating all of Plaintiff's impairments, including migraines, in assessing her limitations. (Resp. at 9.) Thus, Defendant asserts, and the court agrees, any alleged error at step two was harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (noting any error at step two was harmless where the ALJ determined the claimant could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence); *Nunez v. Colvin,* 175 F. Supp. 3d 1258, 1265 (D. Colo. 2016) (finding that any error at step two that claimant's migraine headaches did not constitute a severe impairment did not warrant reversal since ALJ found claimant had other severe impairments).[1]

---

[1] Defendant also states that migraines are a symptom and not an independent severe impairment. (Resp. at 9.) This is incorrect. *See Thomas v. Colvin*, 69 F. Supp. 3d 1174, 1178 (D. Colo. 2014) (remanding an ALJ's denial of benefits for improperly evaluating Plaintiff's migraines at step

b. **Step Four**

Plaintiff acknowledges the ALJ considered her migraines at step four, but contends his findings regarding their impact on her ability to work are not supported by substantial evidence. (Opening Br. at 24-30.)  At step four, the ALJ was required to consider all of Plaintiff's impairments and limitations, even those that are not severe.  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").  "Thus, step four requires a more detailed analysis of the claimant's impairments than is required at step two as the ALJ must specifically analyze the impact the impairments have on the claimant's ability to do the work he has previously done."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

In his decision, the ALJ concluded, "Overall, the medical evidence shows infrequent complaints of headaches and does not suggest that her headaches have been incapacitating, as she alleged at the hearing."  (AR at 36.)  At the administrative hearing, Plaintiff testified that she has experienced migraines for years.  (*Id.* at 126-27.)  She explained they previously interfered with her employment because they caused her to be absent from work approximately two times per week.  (*Id.* at 127.)  She further testified she continues to experience migraines at the same

---

three, noting, "Although there is no separate listing for migraines, the Commissioner has stated that the most analogous listing is section 11.03, which sets forth criteria for non-convulsive epilepsy.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03.").

frequency. (*Id.* at 128.) Plaintiff argues the ALJ erred by failing to place a restriction in the RFC related to the need to be absent more than two days per month on an ongoing basis as a result of her migraines. (Opening Br. at 29-30.) Plaintiff further contends this error was not harmless because the vocational expert testified such a restriction would eliminate all unskilled work and Plaintiff would have, therefore, been found disabled. (*Id.* at 30.)

The medical record shows that on July 24, 2012, Plaintiff saw her Physician's Assistant ("PA"), Mr. Thompson, at the Air Force Academy Family Health Clinic ("FHC") and reported having experienced constant headaches for the previous two weeks. (AR at 503.) On September 10, 2012, Plaintiff underwent surgery on her left ankle and subsequently experienced a severe migraine. (*Id.* at 357, 379.) When she reported this to her orthopedic surgeon, he advised her to contact her primary care physician. (*Id.* at 379.) On September 12, 2012, Plaintiff contacted FHC, explaining she had been experiencing a severe migraine for two days that worsened following ankle surgery and described the pain as a 10/10. (*Id.* at 489.) The FHC directed Plaintiff to go to an emergency room. (*Id.*) Plaintiff chose not to go to the ER and instead, laid a cold cloth on her forehead and rested for the remainder of the day. (*Id.* at 483.) She saw PA Thompson the following day and described her migraine as a "[n]ormal migraine for her but this is lasting a bit longer." (*Id.*) At that time, Plaintiff was already taking Zolmitriptan for migraines. (*Id.* at 484.) PA Thompson administered a Toradol injection to treat Plaintiff's current migraine. (*Id.* at 486.)

On October 24, 2012, Plaintiff saw her primary care physician, Dr. Steven Whitmarsh, at the FHC complaining of lightheadedness, dizziness, and migraine headaches. (*Id.* at 478.) Dr. Whitmarsh diagnosed Plaintiff with idiopathic peripheral autonomic neuropathy and migraine

headaches. (*Id.* at 480.) On April 30, 2013, Plaintiff's records reflect a diagnosis of migraine headaches and a referral to Dr. Aparna Komatineni, a neurologist, for September 2013. (*Id.* at 441, 444.)

On September 25, 2013, Plaintiff was prescribed new medication for her migraines and, as a result, their frequency decreased, though she still experienced them approximately one time per week. (*Id.* at 685.) On October 16, 2013, prior to undergoing an EEG, Plaintiff reported headaches that last all day and described the pain in her head "like a vice grip with a squeezing, bitemporal pain and is worse with activity." (*Id.* at 681.) The EEG showed a "wide range of normal limits. No focal abnormality or seizure discharges noted." (*Id.*) On October 24, 2013, following a neurological appointment, Plaintiff was diagnosed with intractable migraine without aura. (*Id.* at 685.)

In concluding Plaintiff's migraines were not as debilitating as alleged, the ALJ based his conclusion on the following: (1) Plaintiff takes medication for her migraines, (2) an MRI in November 2012 and an electroencephalogram in October 2013 did not reveal any physical explanation for her migraines, (3) during routine medical visits at FHC, Plaintiff only occasionally mentioned headaches, (4) Plaintiff did not mention headaches when she was seen for rash/hives in March and June 2014. (*Id.*) Ultimately, the court cannot conclude the ALJ's consideration of this impairment is supported by substantial evidence. *See Brown*, 912 F.2d at 1196 (defining substantial evidence as evidence a reasonable mind would accept as adequate to support a conclusion).

As an initial matter, the court questions the probative value of Plaintiff not reporting migraines, which she has described as episodic in nature, during individual medical

appointments related to rash/hives. Further, an ALJ must not only discuss the evidence supporting his decision, but also any "uncontroverted or significantly probative" evidence he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *Wall*, 561 F.3d at 1075 (D. Colo. 2009). The ALJ's statement that FHC records only include occasional mentions of headaches appears to ignore her medical records showing a continuing diagnosis of migraine headaches. (*Id.* at 503, 379, 441, 444, 478, 480, 483-84, 486, 489, 681, 685.) Moreover, while Plaintiff does take prescribed medication for migraines, there are records indicating that even with said medication, she continues to experience migraines one time per week.

Additionally, the ALJ's reliance on the lack of objective neurological evidence to support this impairment is misguided. The "absence of unequivocal evidence of migraine headaches does not mean that claimant does not suffer from them, as there is no 'dipstick' laboratory test for such headaches." *Guinn v. Chater*, No. 95-7127, 1996 WL 211140, at *3 (10th Cir. April 30, 1996) (citing *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993)). The Tenth Circuit has provided guidance on this point, holding "We are aware of no medical procedures to objectively evaluate either the severity of a migraine or pain; and where no such conclusive tests exist, the failure to produce such test results is surely an improper basis for discrediting a claimants uncontroverted testimony." *Pennington v. Chater*, No. 96-5177, 1997 WL 297684, at *3 (10th Cir. 1997). *See also Bickham v. Colvin,* No. 13–cv–02414–CMA, 2014 WL 4057179, at *4 (D. Colo. Aug. 11, 2014) ("[W]here no conclusive test exists to evaluate the diagnosis and/or symptomatology of an ailment, as is the case with migraine headaches, the failure to produce such a test is surely an improper basis for discrediting a claimant's uncontroverted testimony." (internal quotations omitted)); *Meyers-Schreiner v. Astrue*, No. 08–

cv–00573–WYD, 2009 WL 890691, at *4-5 (D. Colo. March 31, 2009) ("[H]eadaches and migraines are not generally proved through diagnostic or laboratory tests but are diagnosed through medical signs and symptoms. . . . [T]he ALJ erred in failing to acknowledge the abundant documentation of migraine diagnoses, symptoms and signs as being objective evidence to support the treating physicians' opinions." (internal quotations omitted)); *Brown v. Astrue*, No. 2:07cv1114–CSC, 2008 WL 4846863, at *2 (M.D. Ala. Nov. 7, 2008) ("The ALJ's finding concerning the absence of abnormal diagnostic findings is incorrect; neither the Social Security Administration nor the federal courts require that the severity of migraine headaches be proven through objective clinical findings.").

Further, the court cannot conclude the ALJ's consideration of Plaintiff's migraine headaches could only result in harmless error. As stated, the record indicates that even with medication, Plaintiff may experience migraine headaches one time per week. (*Id.* at 685.) Plaintiff correctly notes that during the administrative hearing, the vocational expert testified if Plaintiff were required to miss work more than one to two days per month, such a restriction would eliminate all unskilled work. (*Id.* at 143-44.) *See, cf., Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) ("[W]e have held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy.").

**2. Additional Issues**

Because the court has determined a remand is necessary to properly consider Plaintiff's migraine impairment, it need not address Plaintiff's additional arguments regarding the ALJ's decision. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (declining to address other issues raised on appeal when the ALJ's error affected the analysis as a whole). However,

because the issue is likely to arise on remand, the court notes some ambiguity in the ALJ's RFC and his supporting reasoning.

A plaintiff's RFC is what he or she can do despite his or her limitations. *Thompson,* 987 F.2d at 1487. The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision. Failure to link the RFC determination to specific evidence constitutes reversible error. *Billups v. Barnhart*, 322 F.Supp.2d 1220, 1228 (D. Kan. 2004); *see also Castillo v. Colvin*, No. 14-978 SCY, 2016 WL 4425729, at *4 (D.N.M. Jan. 5, 2016) ("When an ALJ determines a claimant's RFC, "the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 1996 WL 374184, at *7 (July 2, 1996).").

In the present case, in addition to significant exertional limitations, the ALJ's RFC included the following non-exertional limitations:

> The claimant would need to have avoided concentrated exposure to extreme hot temperatures, noise, vibrations and pulmonary irritants such as dust, fumes, gas, odors, smoke, etc. She should have avoided all exposure to workplace hazards such as unprotected heights, unguarded moving machinery, etc. She would have been limited to unskilled work, with an SVP of one or two, with only simple job-related decision making required. The work should have been performed in an environment with few if any workplace changes. Such work should have required no more than occasional interaction with the general public. The work should not have required operation of heavy equipment.

(AR at 33.) In his decision, the ALJ appeared to rely significantly on the assessment of Dr. Michelle Smith in formulating Plaintiff's RFC. (*Id.* 38-39.) Specifically, the ALJ stated:

> To the extent [Dr. Smith's] assessment is consistent with the above RFC, the undersigned gives it significant weight, as it is supported by the benign physical examination findings of Dr. Smith (and those of Dr. Bowser, see Exhibit B3F)

11

> and the treatment record as a whole.  However, the undersigned has provided additional limitations, beyond those recommended by Dr. Smith, in light of the claimant's history of left ankle injury, migraines, use of narcotic pain medication and rash/hives."

(*Id.*)  However, the only limitation Dr. Smith recommended was that Plaintiff could not lift or carry more than 25 pounds frequently.  (*Id.* at 571-76.)  As noted, the RFC contains significant exertional limitations and thus, is almost wholly inconsistent with Dr. Smith's assessment.  Moreover, it is not clear which limitations, non-exertional or otherwise, were the result of Plaintiff's migraines and/or other specified impairments.  On remand, the ALJ should be cognizant of linking his RFC determination to specific impairments and evidence in the record.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner.

Dated this 30th day of March, 2017.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge